NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted October 17, 2018[*]
Decided October 17, 2018

**Before**

DIANE P. WOOD, *Chief Judge*

JOEL M. FLAUM, *Circuit Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

No. 17-3042

| | |
|---|---|
| CHARLES DENT, | Appeal from the United States District |
|     *Plaintiff-Appellant,* | Court for the Southern District of Illinois. |
| | |
|     *v.* | No. 3:15-cv-00740-NJR-DGW |
| | |
| RANDAL MCBRIDE and | Nancy J. Rosenstengel, |
| DENNIS LARSON, | *Judge.* |
|     *Defendants-Appellees.* | |

**O R D E R**

Illinois prisoner Charles Dent sued two prison doctors under 42 U.S.C. § 1983 for deliberate indifference to his pain from three abscessed teeth, in violation of the Eighth

---

[*] Wexford Health Sources, Inc. was not served with process in the district court and is not participating in this appeal. We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

Amendment. The district court granted the defendants' motion for summary judgment, and Dent appeals. We affirm the judgment.

We construe all facts in the light most favorable to Dent, the nonmoving party. *Shields v. Ill. Dept. of Corrs.*, 746 F.3d 782, 786 (7th Cir. 2014). While incarcerated at Big Muddy River Correctional Center, Dent attended a routine dental exam with Dr. Randal McBride, the prison's dentist and an employee of Wexford Health Sources, Inc. Dr. McBride thought that the visit was unremarkable but did note that Dent had periodontitis (a bacterial infection in the gum). After that October 23, 2014 visit, Dent saw Dr. McBride three more times (December 23, January 6, and January 21); at each visit he complained of continuous mouth pain. At the December appointment, Dr. McBride examined Dent, ordered an x-ray, and prescribed penicillin and ibuprofen. In early January when Dent reported that he was experiencing pain at a previous tooth extraction site, Dr. McBride examined Dent and noted nothing remarkable, but prescribed a different antibiotic and Tylenol. About two weeks later, on January 21, Dent went back to see Dr. McBride and reported that his left jaw was swelling three times a week and that his medication was ineffective. After examining Dent and being unable to diagnose the cause of his pain, Dr. McBride discussed referring Dent to an outside specialist. Before Dr. McBride submitted the referral request five days later, Dent, unhappy with his treatment, filed a grievance with the prison, which Dr. McBride noted in his request. The collegial review board authorized Dent to see outside specialist Dr. Jay Swanson, an oral surgeon, and an appointment was scheduled for one week later.

Dr. Swanson diagnosed Dent with tooth decay and periodontal disease, and he observed that one tooth (#18) had an "early abscess," while another tooth (#17) possibly had an abscess. Dr. Swanson recommended extracting teeth #17 and #18, and he suggested the same for tooth #30 because, even though Dent had not reported experiencing pain in that area, it was decayed and surrounded by periodontitis in the gum. Dr. Swanson testified that removing those three teeth would eliminate Dent's infection and, most likely, Dent's pain.

The day after seeing Dr. Swanson, Dent again complained of mouth pain and swelling. Dr. Dennis Larson, Big Muddy's medical director, examined Dent and transferred him to the infirmary. He prescribed Tylenol #3 and an antibiotic. Four days later, Dr. Larson noted that Dent had less swelling and filled out a referral request for Dr. Swanson to remove Dent's #17 and #18 teeth. The request was approved on

March 4, and Dent was scheduled to see Dr. Swanson at his first available opening. Dr. Swanson removed Dent's #17 and #18 teeth without incident on March 19.

After the surgery, Dr. McBride checked on Dent's surgical site and made sure the bleeding was under control. Dr. McBride prescribed ibuprofen and penicillin. Dent saw Dr. Larson on March 23 with complaints of pain on the right side of his mouth, so Dr. Larson referred him to Dr. McBride, to whom Dent reported sensitivity in tooth #30. Dent inquired about having the tooth removed, and Dr. McBride advised that they should wait to extract it until Dent's surgical site healed. On May 4, Dent again reported great pain in tooth #30, and Dr. McBride prescribed antibiotics and Tylenol. Extraction of tooth #30 was scheduled for May 18, and after the appointment was rescheduled for May 21, Dr. McBride pulled the tooth.

Dent sued Drs. McBride and Larson, Wexford, and Gladyse Taylor, Assistant Director of the Illinois Department of Corrections. During preliminary review, the district judge determined that Dent adequately pleaded claims for deliberate indifference against the prison dentist and physician but dismissed the remaining counts against Wexford and Taylor without prejudice. Dent never amended his pleadings. The judge ultimately entered summary judgment for the defendants, determining that no reasonable jury could conclude that they intolerably delayed Dent's treatment and caused him unnecessary pain.

On appeal, Dent first argues that the district judge improperly decided factual issues in Dr. McBride's favor by crediting his statements while examining Dent that he did not see visual signs of infection and that an old surgical site was healing nicely. But the district judge did not decide any factual issues. Notwithstanding Dent's arguments that Dr. McBride was wrong, he provided no evidence that contradicted Dr. McBride's testimony about his observations. There was no factual dispute to resolve.

Dent next argues that a reasonable jury could conclude that Dr. McBride was deliberately indifferent for failing to diagnose and competently treat his tooth and jaw pain from December 2014 until May 2015. Dent argues that because he has a history of periodontitis, Dr. McBride easily should have diagnosed abscessed teeth. But Dent has come forward with no evidence that Dr. McBride should have known that Dent was suffering from abscessed teeth even though he exhibited no visible symptoms—and Dent's opinion is not evidence. Dr. McBride took an x-ray of Dent's mouth, performed numerous oral examinations, and prescribed what he thought to be proper antibiotics

and pain medication to combat Dent's problems. When he could not provide relief, he sent Dent to a specialist.

Even if Dr. McBride should have diagnosed Dent's abscesses sooner, nothing in the record supports the conclusion that Dr. McBride acted with a culpable state of mind. The fact that Dr. Swanson, an oral surgeon, was able to diagnose one of Dent's teeth as "early abscessed" and another as "possibly abscessed" does not support the contention that Dr. McBride deliberately disregarded the proper treatment of an obvious medical issue or that he persisted in a course of treatment known to be ineffective. *See Petties v. Carter*, 836 F.3d 722, 728–29 (7th Cir. 2016). Dent has no evidence that Dr. McBride's treatment choices were not based on permissible professional justifications, and medical professionals are entitled to deference in their treatment decisions unless "no minimally competent professional would have so responded under those circumstances." *Collignon v. Milwaukee Cty.*, 163 F.3d 982, 989 (7th Cir. 1998). Dent may have preferred treatment other than drugs for infection and pain, but his right to constitutionally adequate medical care does not allow him to select his own treatment. *Jackson v. Kotter*, 541 F.3d 688, 697–98 (7th Cir. 2008).

Dent also argues that the time it took to remove his teeth constituted deliberate indifference to his prolonged pain. But Dent cannot show that he did not receive reasonably timed treatment under the circumstances. "Delays are common in the prison setting with limited resources, and whether the length of a delay is tolerable depends on the seriousness of the condition and the ease of providing treatment." *Petties*, 836 F.3d at 730. Although abscessed teeth can be severe, this case is not like *Dobbey v. Mitchell-Lawshea*, 806 F.3d 938 (7th Cir. 2015), in which the prison dentist waited 16 days to examine an inmate after he specifically complained about an abscessed tooth. Nor does it resemble *Berry v. Peterman*, 604 F.3d 435 (7th Cir. 2010), in which a doctor refused an inmate's request to see a dentist for almost two months while persisting in an ineffective course of treatment for a serious condition requiring oral surgery. Dent's problems were not as obvious or immediately concerning—Dobbey, for example, experienced fever, vomiting, and stomach pain while receiving *no* treatment, and Berry was denied a visit to the dentist while he could not eat, drink, or brush his teeth.

Dr. McBride did not wantonly delay in treating Dent. His efforts, which we have already deemed constitutionally adequate, began the first time Dent came to him complaining of pain. He requested consent to refer Dent to the oral surgeon about four weeks after Dent's pain did not improve, while in the meantime he examined Dent on numerous occasions and prescribed different medications. The delays in Dent's

treatment, such as Dr. McBride waiting until Dent's surgery site healed to recommend extraction of tooth #30, were based either on reasonable medical judgments or were a result of the prison bureaucracy. *See Wilson v. Adams*, 901 F.3d 816, 821–22 (7th Cir. 2018). Dent has no evidence to the contrary.

Additionally, Dr. Larson, who is not a dentist, treated Dent for just a short period. He immediately admitted Dent to the infirmary on February 13 when Dent complained of pain and swelling; he prescribed stronger pain medication and wrote a referral four days later (and after Dent's swelling decreased) for Dent to have his teeth extracted. Dent states for the first time on appeal that Dr. Larson violated his rights because he first got involved on February 13 despite Dent writing him several letters in December and January to complain about Dr. McBride's treatment. The record does not contain any letters addressed to Dr. Larson, and even crediting Dent's assertions, we cannot conclude that Dr. Larson recklessly delayed treatment. Dent was under the care of Dr. McBride, a dentist, during this whole period. The record lacks any evidence that "no minimally competent professional" would have exercised his judgment in a way that allowed Dr. McBride to take the lead in treating Dent. *Collignon*, 163 F.3d at 988.

Lastly, Dent argues that Wexford Health Sources should be subject to respondeat superior liability. But because Dent does not challenge the district court's dismissal of his claim against Wexford, he has waived this argument. *See Alejo v. Heller*, 328 F.3d 930, 934 n.2 (7th Cir. 2003). In any case, there is no underlying liability for which Wexford could be held responsible.

AFFIRMED