BRIAN S. MILLER, UNITED STATES DISTRICT JUDGE
The motions for summary judgment [Doc. Nos. 196, 201, 206] are granted as to the breach of warranty claims, granted in part as to the market share liability theory, and denied as to all other claims. The notices of adoption [219, 228] are recognized. The motions for summary judgment on the issue of punitive damages and motions to bifurcate [Doc. Nos. 204, 211, 221, 223] are denied. The notices of adoption [233, 234] are recognized.
I. BACKGROUND
Ronald Thomas worked as a brake mechanic at Stuart's Brake Shop in Little Rock and North Little Rock for approximately twelve years, where he was required to blow out brake drums with compressed air, grind down new brakes to the appropriate shapes and sizes, and sweep floors. Thomas Dep. 8:9-25, 10:16-24, 12:9-22, 13:18-25, 17:13-21, 20:24-21:6, Doc. No. 243-1. He was also in the shop while other mechanics performed similar tasks. Id. 11:14-24, 13:5-17, 17:22-18:1. Blowing out brake drums, grinding brakes, and sweeping the floors forced brake dust into the air, which Thomas breathed. Thomas Dep. 12:17-13:8; 19:3-12, 21:7-9.
During the time in question, many brake products contained asbestos, which has been linked to various diseases. See Holstein Rep. at 6-7, 17, Doc. No. 247-1. Plaintiff Michael Thomas, Ronald's son, is bringing this lawsuit in his personal capacity and as executor of Ronald's estate, alleging that Ronald died as a result of the mesothelioma he contracted from breathing *613 in asbestos fibers from the brakes manufactured and sold by Ford, Honeywell, Abex, Genuine Parts, and NAPA. See Second Am. Compl. ¶¶ 22, 23, Doc. No. 173. Plaintiff is seeking compensatory and punitive damages for defendants' failure to warn; negligent design or defect; breach of implied warranty; gross negligence; and willful, wanton, and reckless conduct. Id. ¶¶ 26-67. Defendants move for summary judgment.
II. LEGAL STANDARD
Summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a) ; Anderson v. Liberty Lobby Inc. , 477 U.S. 242, 249-50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Once the moving party demonstrates that there is no genuine dispute of material fact, the non-moving party may not rest upon the mere allegations or denials in his pleadings. Holden v. Hirner , 663 F.3d 336, 340 (8th Cir. 2011). Instead, the non-moving party must produce admissible evidence demonstrating a genuine factual dispute requiring a trial. Id.
"If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2). All reasonable inferences must be drawn in a light most favorable to the non-moving party, Holland v. Sam's Club , 487 F.3d 641, 643 (8th Cir. 2007), but a party's own self-serving, conclusory allegations in an affidavit or deposition, standing alone, are insufficient to defeat summary judgment. Haas v. Kelly Services , 409 F.3d 1030, 1034 (8th Cir. 2005). Finally, the evidence is not weighed, and no credibility determinations are made. Jenkins v. Winter , 540 F.3d 742, 750 (8th Cir. 2008).
III. DISCUSSION
Plaintiff must show that defendants were in the business of distributing a defective product that caused Thomas's harm. Ark. Code Ann. § 16-116-101(a). A product is in a defective condition if it is "unsafe for reasonably foreseeable use and consumption." Id. § 16-116-202(2). To prove the asbestos-containing brakes caused Ronald Thomas's harm, plaintiff must show that: (1) Thomas was exposed to asbestos-containing brakes made by one or more of the defendants; (2) his asbestos exposure was frequent; and (3) his injury was caused by defendants' products, and not from some other source. See Chavers v. Gen. Motors Corp. , 349 Ark. 550, 79 S.W.3d 361, 369 (2002).
A. Ford's Motion
Ford's motion for summary judgment is granted on the breach of warranty claim. Ford moves for summary judgment claiming plaintiff: (1) needs expert testimony to prove his claim; (2) cannot prove Ford's products were capable of causing mesothelioma ; (3) cannot prove Ronald Thomas was exposed to Ford products with sufficient frequency, regularity, and proximity; (4) cannot prove a design defect because none of his experts will establish that Ford's products were defective; and (5) cannot prove a breach of warranty because plaintiff failed to notify Ford of this claim before filing the complaint.
1. Expert Testimony
Ford's motion to exclude plaintiff's experts was denied. Doc. No. 299. Consequently, Ford's motion for summary judgment for failure to provide expert testimony is denied.
2. General Causation
There is a genuine dispute of material fact as to whether plaintiff can meet the general causation requirement. Although *614 Ford asserts that its products could not cause mesothelioma, Ford's Br. Supp. Mot. Summ. J. at 4, Doc. No. 198, plaintiff's expert, Edwin Holstein, testified that the asbestos in Ford's brakes causes mesothelioma. See Holstein Dep. 58:18-25, 62:15-63:5, 116:10-17:1, Doc. No. 243-27. Therefore, summary judgment is denied on this issue.
3. Frequency, Regularity, and Proximity
There is a genuine dispute of material fact as to whether Ronald Thomas was exposed to an asbestos-containing Ford product with sufficient frequency, regularity, and proximity to meet his burden. See Chavers , 79 S.W.3d at 369.
Ronald Thomas was deposed before his death and stated that approximately three percent of the brake jobs he performed involved Ford brakes. Thomas Dep. 137:1-4. He installed Ford brakes from a labeled box and his employer bought brakes from a Ford dealership. Id. 15:15-19, 137:8. He stated that ten to fifteen brake jobs per day were performed at the Stuart's location in Little Rock and approximately six were performed per day at the North Little Rock location. Thomas Dep. 123:15-22. In that Thomas performed many of these jobs himself during his twelve years at Stuart's, there is sufficient evidence to create a dispute of fact as to whether he was exposed to an asbestos-containing Ford product with sufficient frequency, regularity, and proximity to meet his burden. See Chavers , 79 S.W.3d at 369 ; Thomas Dep. 8:12-14, 17:14-21. Therefore, summary judgment is denied on this issue.
4. Design Defect
There is a genuine dispute of material fact as to whether Ford's products were unsafe for foreseeable use. See Ark. Code Ann. § 16-116-202(2). Edwin Holstein's report states that asbestos, even in low doses, is dangerous. Holstein Report at 26-27. Further, it was foreseeable that the work performed by the brake mechanics would create brake dust that the mechanics would breathe. See Thomas Dep. 23:2-8.
Ford argues that, as a matter of law, plaintiff cannot prove Ford's breaks had a defective design because plaintiff has failed to show that a safer alternative design existed. Ford's Br. Supp. Mot. Summ. J. at 9. Such a showing, however, is not required. Boerner v. Brown & Williamson Tobacco Corp. , 260 F.3d 837, 846 (8th Cir. 2001) ; In re Prempro Prods. Liab. Litig. , MDL Docket Nos. 4:03-CV-1507-BRW, 4:04-CV-01169, 2008 WL 150065, at *2 (E.D. Ark. Jan. 14, 2008). Therefore, summary judgment is denied on this issue.
5. Breach of Warranty
Summary judgment is granted to Ford on plaintiff's breach of warranty claim because plaintiff failed to notify Ford of Thomas's injury and plaintiff's intent to seek damages for breach of warranty. See Ark. Code Ann. § 4-2-607 cmt. 5. The motions of Honeywell and Abex to adopt Ford's motion as to plaintiff's breach of warranty claim [Doc. Nos. 219, 228] are granted.
A plaintiff pursuing a breach of warranty claim, including a non-buyer beneficiary, must notify the defendant of his intent to enforce the warranty before bringing a lawsuit. Ark. Code Ann. § 4-2-607 cmt. 5 (the pretrial notice requirement extends to the beneficiary). Although this language is found in the notes to the statute, and not in the statute itself, the Arkansas Supreme Court looks to the official comments when interpreting Arkansas's Uniform Commercial Code. See, e.g. , Cotner v. Int'l Harvester Co. , 260 Ark. 885, 545 S.W.2d 627, 630 (1977). Therefore, the Arkansas Supreme Court would likely require plaintiff to give notice before bringing his breach of warranty claim.
*615 B. Honeywell's Motion
Honeywell moves for summary judgment stating that there are no facts proving: (1) causation; (2) that Honeywell's products were defectively designed; (3) that Honeywell breached a duty to warn; or (4) that Honeywell breached a warranty.
1. Causation
Honeywell's motion to exclude the testimony of plaintiff's experts, Arnold Brody and Holstein, was denied. Doc. No. 299. The reports of Brody and Holstein, along with Thomas's deposition testimony that he was exposed to Bendix brakes, create a dispute of fact as to whether Honeywell's products caused Thomas's mesothelioma.
As discussed above, whether the asbestos-containing brakes caused Thomas's death is a disputed issue of fact. Therefore, the only question unique to Honeywell is whether Thomas was exposed to Honeywell brakes with sufficient frequency, regularity, and proximity. See Chavers , 79 S.W.3d at 369. Bendix brakes are Honeywell products. Honeywell's Statement of Facts ¶ 7, Doc. No. 203.
Thomas stated that he worked with Bendix brakes several times and relies on the fact that he saw a Bendix brake box near a brake he worked on. Thomas Dep. 87:22-88:4. He stated he was sure he was present when Bendix brakes were being ground. Id. 90:4-6. Bill Parsons, who worked with Thomas, testified that Parsons used Bendix brakes frequently. Parsons Dep. 18:24-19:7, Doc. No. 243-2. Parsons said the shop might replace a thousand brake shoes a week. Id. 19:17-20:7. Reviewing this evidence in the light most favorable to Thomas, a reasonable juror could infer that Thomas was exposed to Bendix brakes and that his exposure was a cause of his mesothelioma. See Chavers , 79 S.W.3d at 369.
2. Design Defect
There is a genuine dispute of material fact as to whether Honeywell's products were unsafe for foreseeable use. As discussed above, whether asbestos-containing brakes are unreasonably dangerous is disputed. See Holstein Rep. 26-27. While other factors may have caused, or at least contributed to, Thomas's mesothelioma, the ultimate question of causation is a question of fact for the jury to decide.
3. Failure to Warn
Summary judgment is denied on plaintiff's failure to warn claim. "As a general rule, a manufacturer has a duty to warn the ultimate user of the risks of its product. This duty exists under either the negligence or strict liability theories." West v. Searle & Co. , 305 Ark. 33, 806 S.W.2d 608, 613 (1991). The warning must be reasonable and adequate. Singleton v. Ark. Housing Auths. Property & Casualty Self-Insured Fund, Inc. , Case No. 4:15-CV-205-KGB, 2018 WL 1588022, at *4 (E.D. Ark. March 31, 2018) (citing Ark. Model Jury Inst., Civil 1002 (2017) ).
The parties dispute whether Honeywell's warning was reasonable and adequate, as Thomas did not recall seeing a warning. Thomas Dep. 21:20-22:1. For some time, Honeywell's warnings were in small print on the bottom of the box, where a mechanic might not be expected to look. See Images of Bendix Box, Doc. No. 252-57. Given that the wording, size, color, and placement of a warning are relevant to whether the warning was adequate, this is a fact-intensive inquiry. Consequently, this is an issue for the jury to decide.
4. Breach of Warranty
Honeywell's motion for summary judgment is granted as to Thomas's breach of *616 warranty claim for the reasons set forth in section A.5 above.
C. Abex's Motion
Abex's motion for summary judgment on the issue of liability is denied because plaintiff can prove exposure to asbestos-containing Abex products with sufficient frequency, regularity, and proximity.
Holstein testified that Abex products were marketed under the name Rayloc, Holstein Dep. 133:3-5, and Thomas testified that he breathed dust from the grinding of Rayloc brakes and that Rayloc brakes were ground every week he worked at Stuart's. Thomas Dep. 19:13-16; 163:8-12. This is sufficient to create a dispute of fact as to whether the grinding of new Abex brakes caused Thomas's mesothelioma.
Abex, however, distinguishes between Thomas's exposure to new brakes that Thomas could clearly identify as Rayloc brand, and old brakes Thomas removed from cars, which bore no brand identification. See Abex's Br. Supp. Mot. Summ. J. at 6, Doc. No. 207; Thomas Dep. 14:17-19. Abex therefore asks that plaintiff be prohibited from arguing that unidentified brakes removed from cars were Abex brakes. This motion is granted in part.
"Arkansas has not adopted alternative or market share liability, but has retained the traditional requirement of proximate cause in all tort cases." Jackson v. Anchor Packing Co. , 994 F.2d 1295, 1303 (8th Cir. 1993). When installing new brakes, Thomas could tell who the manufacturer was if the brake pad was in or near a box bearing the manufacturer's name. Thomas Dep. 86:24-87:25. By contrast, when removing old brakes, Thomas could not tell what company manufactured them. Id. 97:25-98:2.
Plaintiff is not permitted to rely on Abex's market share to determine how many of these removed brakes were manufactured by Abex. See Jackson , 994 F.2d at 1303. Therefore, summary judgement is granted on any claim for liability against Abex that is rooted in its market share. Evidence has been presented, however, that Stuart's had repeat customers and that its brake mechanics installed Rayloc brakes on the cars of repeat customers. See Parsons Dep. 29:17-21. Testimony that attempts to quantify the use of Abex's products by showing that brake mechanics removed brakes from cars of repeat customers that the mechanics knew were Rayloc brakes is not rooted in market share theory and is permissible.
D. Punitive Damages
Summary judgment is denied on the issue of punitive damages, and defendants' motions to bifurcate are denied. Although Ford argues that Michigan law should apply on the issue of punitive damages, it does not argue against applying Arkansas law to the issue of liability. See Ford's Br. Sup. Mot. Summ. J. on Punitive Damages at 10, Doc. No. 205.
Arkansas is the forum state so its choice of law rules apply. Shelby Cty. Health Care Corp. v. S. Farm Bureau Casualty Ins. Co. , 855 F.3d 836, 841 (8th Cir. 2017). When deciding which state's law applies in tort cases, Arkansas courts first consider "which [s]tate has the most significant relationship to the action and the parties" and then analyze five factors: "(1) predictability of results, (2) maintenance of interstate and international order, (3) simplification of the judicial task, (4) advancement of the forum's government interests, and (5) application of the better rule of law." Id. at 842.
Arkansas has the more significant relationship to the case and the parties because Thomas was injured in Arkansas and Ford did business in Arkansas. Thomas Dep. 8:2-6, 15:15-24. Although Ford's *617 principal place of business is in Michigan, Thomas had no relationship to Michigan. See Second Am. Compl. ¶ 8. Further, Arkansas's governmental interest in protecting its citizens from harmful out-of-state products is furthered by applying Arkansas law. See Winter v. Novartis Pharm. Corp. , 739 F.3d 405, 410 (8th Cir. 2014) (applying Missouri choice of law rules); Sanchez v. Boston Scientific Corp. , 38 F.Supp.3d 727, 738-39 (S.D.W. Va. 2014) (applying California choice of law rules).
Arkansas permits punitive damages in products liability cases when the plaintiff proves liability and shows that the defendant knew or should have known that its conduct would probably result in injury, yet continued to engage in the conduct with malice or in reckless disregard of the consequences. Ark. Code Ann. § 16-55-206.
Although this is a very close call, and a motion for judgment as a matter of law might be granted at the close of plaintiff's case, summary judgment is denied. The motion is denied because Thomas presented some evidence evincing that defendants were aware that the asbestos fibers in their brakes were harmful but that defendants continued to distribute those brakes anyway. See Taylor Dep. 65:4-66:25, 68:1-24, Doc. No. 243-3 (Ford); Cohen Dep. 70:15-18, Doc. No. 252-4; Bendix Bulletin, Doc. No. 252-69 (Honeywell).
The notices of Genuine Parts and NAPA adopting the motions for summary judgment on the issue of punitive damages and Abex's motion to adopt Ford's motion for summary judgment on the issue of punitive damages [Doc. Nos. 223, 233, 234] are noted. The motions to bifurcate are denied.
IV. CONCLUSION
For the reasons set forth above, all motions for summary judgment [Doc. Nos. 196, 201, 206] are granted as to the breach of warranty claims, granted in part as to the market share liability theory, and denied as to all other claims. The notices of adoption [219, 228] are recognized. The motions for summary judgment on the issue of punitive damages and motions to bifurcate [Doc. Nos. 204, 211, 221, 223] are denied. The notices of adoption [233, 234] are recognized.
IT IS SO ORDERED this 21st day of December 2018.